## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**THOMAS LYANNAS,**

      **Plaintiff,**

v.                                      **No. 1:21-cv-0660-JHR**

**KILOLO KIJAKAZI, Acting Commissioner**
**of Social Security,**

      **Defendant.**

## MEMORANDUM OPINION AND ORDER AFFIRMING THE DECISION OF THE COMMISSIONER DENYING BENEFITS

Before the Court is Plaintiff Thomas Lyannas's Motion to Reverse or Remand Administrative Agency Decision with Memorandum of Law in Support Thereof. [Doc. 20]. Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73(b), the parties consented to Magistrate Jerry H. Ritter resolving Plaintiffs' challenge to the Commissioner's final decision on Thomas Lyannas's application for Social Security benefits and entering final judgment in this appeal. [Doc. 8]. Having reviewed the parties' briefing and the Administrative Record ("AR"), the Court denies Plaintiff's motion and affirms the decision of the Administrative Law Judge.

## I.  BACKGROUND AND PROCEDURAL HISTORY

Plaintiff argues two issues in his appeal from the Social Security Administration's final decision denying benefits. First, Plaintiff asserts that the Administrative Law Judge ("ALJ") did not properly evaluate the opinions of treating physician Mark L. Whitehead, Ph.D., consultative examiner Elaine O. Foster, Ph.D., and the non-examining State agency consultants, thus rendering the mental residual functional capacity determination not supported by substantial evidence and the product of legal error. [Doc. 20, p. 1]. Second, Plaintiff contends that the ALJ filed to properly

1

evaluate the opinion of Certified Nurse Practitioner Briana Smith, thus rendering the physical residual functional capacity not supported by substantial evidence and the product of legal error. *Id.*

The Commissioner defends that the ALJ reasonably assessed Plaintiff's residual functional capacity and that Plaintiff failed to show harmful error in the ALJ's discussion of opinions on mental limitations. [Doc. 22, p. 10]. The Commissioner further responds that the ALJ reasonably articulated the reasons for declining to give much weight to nurse practitioner Smith's opinion. *Id.* at 19. For the reasons explained in this Order, the Court agrees with the Commissioner.

Plaintiff applied protectively for Title II Social Security Disability Insurance Benefits ("DIB") and for Title XVI Supplemental Security Income on October 6, 2014, claiming disability beginning August 28, 2014. [Doc. 20, p. 1]. Plaintiff alleged he could not work because of symptoms caused by lower back and neck problems, arthritis, severe headaches, post-traumatic stress disorder ("PTSD"), asthma, eye problems, and migraines. *Id.* The Administration denied Plaintiff's applications initially on December 17, 2015, and upon reconsideration on June 1, 2016. *Id.* at 1, 2. Plaintiff timely requested a hearing and the ALJ issued an unfavorable decision. *Id.* at 2. The Appeals Council thereafter remanded the case based on Plaintiff's Appointments Clause challenge. *Id.* A second ALJ held a hearing on July 23, 2020, and issued an unfavorable decision on December 8, 2020. *Id.* The Appeals Council denied review on May 21, 2021, which made the ALJ's December denial the Commissioner's final decision.[1] AR 1. Plaintiff timely sued the Acting

---

[1] Claimants who are denied benefits must obtain a "final decision" from the Administration before they may appeal the denial to a federal district court. *See* 42 U.S.C. § 405(g). Generally, when the Administration's Appeals Council denies review after the ALJ denies benefits, the ALJ's decision is "final" enough for a district court to review. 20 C.F.R. § 422.210(a); *see also Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003) (finding that the Appeals Council's denial of review made an ALJ's decision to deny benefits "the Commissioner's final decision for purposes of review").

Commissioner in this Court on July 19, 2021 [Doc. 1]. This Court has jurisdiction to review the Commissioner's final decision under 42 US.C. § 405(g) and 20 C.F.R § 422.210(a).

This case was assigned to me on July 19, 2021, [Doc. 3], and the parties consented to my presiding. [Doc. 8]. On March 24, 2022, Plaintiff moved to reverse the Commissioner's decision and remand for rehearing.  [Doc. 20].  The Commissioner responded on May 24, 2022, [Doc. 22], and Plaintiff replied on June 9, 2022 [Doc. 23], which completed briefing.  [*See* Doc. 24].

Documentation of Plaintiff's mental health treatment began in 2010 when he was referred to Mesilla Valley Hospital from Memorial Medical Center after he passed out. *See* AR 813.  At that time, he reported that his ex-wife was keeping his antidepressant medication from him and his diagnoses included dissociative disorder, anxiety, and chronic pain. AR at 813-814. The facility records also noted that Plaintiff was physically and sexually abused by his father and uncle as a child and that he used alcohol and marijuana to self-medicate. AR at 819-820. His medical concerns indicated chronic migraines, rheumatoid arthritis, bulging disc, and broken eye socket. *Id.*  at 821. His mental status exam showed racing disorganized thoughts, impaired long-term memory, and fair insight and judgment. *Id.*  at 822.  Plaintiff rated his continuous pain as level 8-9 and treated it with Tramadol. *Id.* at 830. He self-reported to be at the facility for help with depression and PTSD. *Id.* at 837.

Four years later, Plaintiff received mental health treatment at the Peak Psychiatric Hospital. *Id.*  at 851. His conditions had generally worsened since the prior stint at Mesilla Valley Hospital, although he improved during this stay at the Peak. *See id.*  at 851-53.  The discharge summary reflected diagnoses of bipolar disorder, alcohol disorder, PTSD, and use/abuse of various drugs. *Id.* at 851. The course of treatment, which included alcohol detox and medication for pain, depression and nightmares, was successful. *Id.*  Plaintiff's discharge condition and prognosis were

stable and expected to remain so as long as he complied with his medication regimen and did not drink alcohol. *Id.* at 852. His aftercare plan included medication management and therapy with La Frontera. *Id.* at 853. The mental status exam noted that Plaintiff used a cane due to chronic pain. *Id.* A physical and neurological examination also stated that Plaintiff ambulates with a cane held, has a slow gait, is slow, and has difficulty transitioning from standing to sitting and vice versa. *Id.* at 860, 861.

Plaintiff received primary care with DNP Jennifer Fisher at Ben Archer Health Center. *See* AR 870-917. These records documented Plaintiff's diagnoses and treatment for bipolar disorder, anxiety, lumbago with sciatica, asthma, chronic pain, PTSD, thoracic spondyloses, bulging disc, and alcoholism. *See, e.g.*, AR. at 874-77. They also indicated inconsistent compliance with treatment. *See id.*

An MRI showed that Plaintiff had a mild disc bulge and thoracic spondylosis, both without impingement. *Id.* at 885, 1012-13. Plaintiff required sedation (Ativan) for the MRI after a cancelation due to his anxiety and claustrophobia. *Id.* at 887, 889., 897. After failing to complete the first MRI, referrals were made to a psychiatrist for anxiety and back pain management. *Id.* at 898. DNP Smith had a "frank discussion" with Plaintiff regarding his alcoholism and refusal to detox. This discussion motivated Plaintiff to enter inpatient alcohol rehabilitation, which improved his back pain as well. Id. at 901. Plaintiff got a cane on September 9, 2014, which improved back pain while walking, but still walked gingerly appearing in pain. *Id.* at 885, 887, 894, 900. Plaintiff's lumbar back pain caused bilateral leg weakness, tingling, and pain down to his feet which was unresponsive to muscle relaxants. *Id.* at 902. Injections, hydrocodone-acetaminophen, and an MRI were prescribed. *Id.* at 903-04.  Plaintiff was assessed with a back sprain and given injectables for back spasms. *Id.* at 895-96. The plan noted that Plaintiff "may want referral to

Delahoussaye for disability eval." *Id.* at 896. Plaintiff was also referred to a pulmonologist for emphysema. *Id.* at 890.

Plaintiff attended counseling starting in December 2014. *Id.* at 959. He presented with "a lot of issues including "alcoholism, sexual abuse, PTSD and more" and was willing to work on them *Id.* His PTSD stemmed from severe family sexual abuse. *Id.* at 952. At first Plaintiff presented as extremely agitated and his therapist helped calm him with cognitive behavioral therapy. *Id.* at 957, 942. Plaintiff had never dealt with this trauma which was surfacing. *Id.* Plaintiff nonetheless made "a really strong effort" in therapy. *Id.* at 953. Plaintiff experienced several anxiety attacks which he reported in therapy. On May 5, 2015. His therapist reminded him to practice strategies to manage stress and anxiety, to which Plaintiff agreed. *Id.* at 924. Yet even when "good things" were happening, Plaintiff had out of control anxiety which his therapist helped him manage. *Id.* at 925-26. The therapist reminded Plaintiff to implement his anxiety strategies when he struggled, stating "if he keeps waiting for a time when there is less stress [] he will never do it." *Id.* at 929. The therapist described Plaintiff as very stressed but better able to handle processing his trauma; however, due to his new sobriety "he is still very vulnerable." *Id.* at 936. Plaintiff maintained a good attitude and was "amenable to progress" during therapy." *Id.* at 941. Cognitive behavior therapy assisted Plaintiff in changing his stress reactions and PTSD. *Id.* at 942.

Plaintiff began seeing Dr. Muralidhasan in early 2015 for back and neck pain that he reported had worsened. *Id.* at 1043. Plaintiff reported fatigue, shortness of breath at rest, and chronic back pain. 1034-35. Assessments included backache and cervicalgia. *Id.* at 1042. A new set of neck and back MRIs showed degenerative changes in the L5-S1 disc and facet joints and at multiple levels in the cervical spine, along with atherosclerotic changes in the carotid arteries. *Id.* at 1051-52.

Dr. Mark Whitehead commented on Plaintiff's therapy status in a progress note from October 2015. *Id.* at 1058. Based on his "violent" upbringing, Plaintiff suffered from PTSD, asthma attacks, emotional flashbacks, violent dreams, fear of being alone, sleep and concentration difficulties, and hyper alertness. *Id.* Dr. Whitehouse outlined the therapy strategies used to help Plaintiff and stated that he "has much to overcome" and will need ongoing therapy. *Id.* at 1059. Dr. Whitehead's note from 2017 summarized his opinion on Plaintiff's ability to work. 1097. He stated that Plaintiff "has attempted to work as a mechanic but his jobs did not last because of anxiety so intense he couldn't leave home" as well as exhaustion from lack of sleep. 1097. Thus, Dr. Whitehead opined, "[i]t is only recently that he has admitted that he cannot work and totally support himself." 1097. Dr. Whitehead also completed a treating source statement.

Dr. Foster conducted a psychological consultative examination on November 30, 2015. *Id.* at 1062. Dr. Foster noted that Plaintiff cited lower back and neck pain, arthritis, severe headaches, PTDS, asthma, eye problems, and migraines as the reasons he stopped working. 1062-1063. Medical history included rheumatoid arthritis, bulging cervical and lumbar spine discs, chronic migraines, asthma, and hypercholesterolemia. Id. at 1064. His chief complaints were PTSD, manic depression, and anxiety disorder. 1063. Dr. Foster noted that Plaintiff's "passions" are automotive, and Plaintiff reported being unable to work because of pain even though he loves restoring classic cars. *Id.* The longest job Plaintiff held was at Lube 'n Go from 1990 to 2000. *Id.* His most recent job was an automotive position from 2013-2014, which he left because of back pain and anxiety, especially when his boss yelled at him. *Id.*

Dr. Foster documented generally normal attitude, mood, affect, thought content, and mental activity. *Id.* at 1064. However, Plaintiff's memory performance reflected the impaired range due to his inability to reproduce several memory recall tests. *Id.* at 1065. Plaintiff's insight

and judgment were also "questionable" because of his pessimistic thinking, perceiving all work environments to involve screaming and criticism, thus leaving him unable to work again. *Id.* Dr. Foster was concerned that Plaintiff did not include alcohol in his ongoing psychiatric problems. Dr. Foster determined that Plaintiff struggled with concentration, persistence, and pace and appeared "moderately impaired" because he "struggled to follow the stream of conversation during the evaluation" and seemed "distractable." *Id.* at 1066. Plaintiff's symptoms had been stable for about a year, but Dr. Foster noted that his condition waxed and waned. *Id.* Dr. Foster recorded Plaintiff's activities of daily living, comprising driving his wife to work, picking up around the house and yard, buying groceries, letting the dogs out, and spending time with his wife, and noted that Plaintiff can use a basic computer and phone. *Id.* Dr. Foster assessed Plaintiff's prognosis as "guarded" given his persistent symptoms. *Id.*

Plaintiff tried another primary care physician for his back pain, Dr. Norman Harrison, in 2016. *Id.* at 1069. Dr. Harrison documented Plaintiff's years-long pain and disc disease history. *Id.* at 1114. Dr. Harrison did not note that Plaintiff appeared in distress at the first visit but noted restricted mobility and range of motion pain in neck and back. *Id.* at 1072. At Plaintiff's second visit, Dr. Harrison noted Plaintiff had a normal gait *Id.* 1069. Dr. Harrison ordered an MRI with contrast on his cervical spine. *Id.* at 1073, 1074. That MRI showed "[m]oderate intervertebral disc narrowing and spondylosis are seen at C6-7" with calcification "visible in right and left side of neck, and maybe carotid arterial." *Id.* at 1074. However, Dr. Harrison did not treat chronic pain with narcotics and so he recommended another provider for pain management. *Id.* at 1070, 1072. Dr. Harrison documented Plaintiff's reported severe pain while trying to work on his truck: Plaintiff's truck broke down and he "had to work on it alone," which made the pain "sho[o]t up."

*Id.* Plaintiff admitted that he hadn't yet made an appointment with the orthopedic surgeon due to a needle phobia from a spinal tap procedure years ago. *Id.*

Plaintiff then turned to La Clinica de Familia for primary care and saw several providers for a variety of health issues, including pain. *See* AR at 1128-1164. Nurse Practitioner Smith opined on Plaintiff's pain and limitations in a treating source statement. AR 1090-94.

## II.   THE COMMISSIONER'S FINAL DECISION

A claimant seeking disability benefits must establish that he is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). The Administration must apply a five-step analysis to determine eligibility for benefits. 20 C.F.R. § 404.1520(a)(4).[2]

At step one of the sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 28, 2014. AR at 17. At step two, she found that Plaintiff had four severe impairments: degenerative disc disease, asthma/emphysema, hearing loss (late onset, December 1, 2018), bipolar disorder, and PTSD. *Id.* At step three, the ALJ found that Plaintiff's impairments, individually and in combination, did not meet or medically equal any impairment listed in Appendix 1 to C.F.R. Title 20, Part 404, Subpart P. AR at 19.

When a claimant does not meet a listed impairment, the ALJ must determine the claimant's residual functional capacity. 20 C.F.R. § 404.1520(e). Residual functional capacity is a

---

[2] These steps are summarized in *Allman v. Colvin*, 813 F.3d 1326, 1333 n.1 (10th Cir. 2016). Regulations for determining whether a claimant is disabled for purposes of for both DIB and SSI are identical but are nonetheless codified in two separate parts of the Code of Federal Regulations.  Part 404 of Title 20 governs DIB while Part 416 governs SSI.  The Court cites only the applicable regulations in Part 404, but the analogous regulations in Part 416 apply as well.

multidimensional description of the work-related abilities a claimant retains despite impairments. 20 C.F.R. at § 404.1545(a)(1).  It "does not represent the *least* an individual can do despite his or her limitations or restrictions, but the *most*."  Social Security Ruling ("SSR") 96-8p at *Definition of RFC*.  The ALJ determined that Plaintiff could do the following:

> Perform light work . . . except the claimant can occasionally stoop, crouch, kneel, crawl, and climb ramps and stairs. He can never climb ladders, ropes, or scaffolds, and can never be exposed to unprotected heights or hazardous machinery, or concentrated exposure to environmental irritants. He can perform simple, routine tasks, but cannot engage in fast-paced production work. He can make simple work decisions. He can occasionally interact with co-workers, supervisors, and the general public. His work should be performed in the same location every day. As of December 1, 2018, the noise level of the work environment should be moderate or less.

AR at 20-21. The ALJ stated that she reached these conclusions after considering all of Plaintiff's symptoms and the consistency of those symptoms with all record evidence as required by 20 C.F.R. §§ 404.1529, 416.929, and SSR 16-3p. *Id.* at 21. The ALJ also stated she considered opinion evidence in accordance with the requirements of 20 C.F.R. §§ 404.1527 and 416.927. *Id.*

In reaching the RFC, the ALJ discussed Plaintiff's hearing testimony, medical records, imaging studies, physical examinations, and opinion statements by treating and consulting professionals. *Id.* at 21-27. The ALJ found Plaintiff's allegations not entirely consistent with the evidence of record because of (1) inconsistency with the objective medical evidence, and (2) inconsistency with many intact daily activities. *Id.* at 22. Regarding the medical evidence, the ALJ relied on Plaintiff's lack of medical treatment to be expected of a totally disabled person, his somewhat effective medication management, and his admission of certain abilities. *Id.* Regarding daily activities, the ALJ relied on Plaintiff's description of fixing his truck and other activities to conclude that Plaintiff is not limited to the degree expected considering the complaints of disabling symptoms. *Id.*  The ALJ described the pain management Plaintiff tried, including narcotics and

9

injections, but noting no physical therapy. *Id.* at 23. The ALJ dismissed Plaintiff's claimed need for a cane to walk, determining that no physician documented when, how long, and under what circumstances Plaintiff requires the cane as the regulations require. *Id.*

The ALJ also considered Plaintiff's mental health treatment, including inpatient psychiatric care in 2014 and cognitive behavioral therapy in 2015. *Id.* at 24. The ALJ noted Plaintiff's improved condition upon discharge from inpatient treatment and stable condition in therapy. *Id.* The ALJ assessed the statement of Plaintiff's mental health conditions from treating psychologist Dr. Whitehead. *Id.* at 25. The ALJ gave Dr. Whitehead's statement partial weight, deeming it partially consistent with the record evidence. *Id.* The ALJ rejected Dr. Whitehead's opinion that Plaintiff is markedly limited in his concentration and persistence abilities because Plaintiff, his fiancée, and the consultative examiner reported that he is generally able to focus and moderately impaired in concentration. *Id.* The ALJ also rejected Dr. Whitehead's opinion that Plaintiff would be off-task twenty percent of the day and absent from work four days per month because other statements indicate Plaintiff is stable on his medication and progressing with counseling. *Id.* The ALJ did agree with Dr. Whitehead's opinion that Plaintiff is limited in understanding, remembering, and applying information, interacting with others, and adapting and managing himself. Finally, the ALJ declined to credit Dr. Whitehead's opinion that Plaintiff could not work, reasoning that the issue is reserved for the Commissioner.  *Id.*

The ALJ also gave partial weight the opinion of consultative examiner Dr. Elaine Foster as partially consistent with the evidence. *Id.* at 26. She found that Dr. Foster's opinion regarding understanding and following basic instructions was inconsistent with evidence such as car repair and spoken instruction abilities. *Id.* However, the ALJ found persuasive Dr. Foster's opinion on

Plaintiff's limited ability to relate to others and concentration such that Plaintiff could concentrate for simple tasks. *Id.*

The ALJ gave partial weight to the non-examining state agency psychological consultants' opinions. *Id.* They opined that Plaintiff could follow simple instructions, adapt to simple routines, and superficially relate to people at work but not the general public. *Id.* She found this consistent with the evidence except for not relating to the public. *Id.*

The ALJ gave little weight to state agency medical consultants' opinions. *Id.* They opined that Plaintiff's spine disorders were not severe. *Id.* The ALJ disagreed and found their opinions inconsistent with imaging and medical record evidence that Plaintiff had lumbar spine disc bulges and narrowing, among other back symptoms. *Id.*

The ALJ gave little weight to Certified Nurse Practitioner Smith's opinion, determining that it was inconsistent with the record and also unsupported by her own examinations. *Id.* at 27. Nurse Smith opined that Plaintiff required a cane, could occasionally reach and handle, and could never engage in postural activities. *Id.* She also stated that Plaintiff would be so off-task and absent that he could not work. *Id.* The ALJ found these opinions inconsistent with Plaintiff's statements of working on his truck and with Smith's records showing normal gait, motor strength, sensation, reflexes, and coordination. *Id.* The ALJ also noted that Smith failed to describe the amount of time she thought Plaintiff could sit, stand, and walk in a workday. *Id.*

Finally, the ALJ gave partial weight to the third-party function report of Plaintiff's fiancé, Jessica Winn. *Id.* The ALJ found her statements generally consistent with Plaintiff's account and deserving of some weight because she sees Plaintiff every day. *Id.* However, the ALJ also concluded that Ms. Winn overstated the degree of limitations when compared to the objective medical evidence. *Id.*

At step four, the ALJ found that Plaintiff could not perform any past relevant work. *Id.* at 28. At step five the ALJ determined that Plaintiff could perform jobs existing in significant numbers in the national economy considering his age, education, work experience, and RFC. *Id.* The ALJ relied on a vocational expert's testimony in finding that Plaintiff could work as a housekeeping cleaner, mail room clerk, and garment sorter. *Id.* at 19. The vocational expert testified that even with a sedentary light work limitation (which the ALJ did not adopt) Plaintiff would still be able to find work in significant numbers in the national economy. *Id.* at 59.

## III.   STANDARD OF REVIEW

This Court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (quoting *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014)). A deficiency in either area is grounds for remand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012). The Commissioner's findings are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, requiring more than a scintilla but less than a preponderance. *See* 42 U.S.C. § 405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). The substantial evidence threshold "is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). A decision is not based on substantial evidence if it is overwhelmed by other record evidence. *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014).

## IV.   ISSUES PRESENTED

**A.** Whether the ALJ's mental RFC determination is supported by substantial evidence and is the product of legal error where the ALJ discussed the reasons for her findings and partially incorporated Plaintiff's providers' limitations into the RFC?

**B.** Whether the ALJ's physical RFC determination is supported by substantial evidence where the ALJ identified the inconsistencies between Plaintiff's provider's opinions in the record and incorporated certain physical limitations into the RFC?

## V. <u>ANALYSIS</u>

### A. The ALJ did not err in giving partial weight to Dr. Whitehead's opinion on mental limitations.

This case predates a change in regulations: for cases filed prior to March 17, 2017, treating physician opinions are entitled to greater weight than other medical opinions. *See* 20 CFR § 404.1520(c) (current regulation); 20 CFR § 404.1527(a)(2) (old regulation applicable here); *Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004); *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). In an older case like this, the ALJ must first decide whether or not to afford the treating source opinion "controlling weight." *Watkins*, 350 F.3d at 1300. A treating source opinion must be evaluated against medically acceptable clinical and laboratory diagnostic techniques and the other evidence in the case record. *Id.* The ALJ's analysis is sequential in this regard. *Id.*

The ALJ must first consider whether the opinion is supported by medically acceptable clinical and laboratory techniques. *Robinson*, 366 F.3d at 1082. If not, the inquiry ends. *Id.* However, if the ALJ finds that clinical and laboratory techniques support the treating physician's opinion, the ALJ next "must confirm that the opinion is consistent with other substantial evidence in the record." *Id.* "In other words, if the opinion is deficient in either of these respects, then it is not entitled to controlling weight." *Id.*

The treating source's medical opinion is still entitled to deference even if the ALJ finds that the treating physician's opinion is not entitled to controlling weight. *Id.* The ALJ must use the following factors in assessing what deference to assign the opinion:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* The ALJ must give good reasons for the weight it assigns a treating physicians opinion. Id. The reasons must be "sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinions and the reason for that weight." *Id.*

While the record must show that the ALJ considered each of the above factors, "the ALJ's decision need not include an explicit discussion of each factor." *Andersen v. Astrue*, 319 F. App'x 712, 718 (10th Cir. 2009). Indeed, "[n]ot every factor is applicable in every case, nor should all six factors be seen as absolutely necessary." *Martinez v. Colvin*, No. CV 16-211 GJF, 2016 WL 8230658, at *7 (D.N.M. Dec. 19, 2016) (citing *Langley* v. *Barnhart*, 373 F.3d at 1119 (10th Cir. 2004)). It is absolutely necessary, however, that the ALJ provide "good reasons—reasons that are sufficiently specific to [be] clear to any subsequent reviewers—for whatever weight she ultimately assigns to the opinions." *Id.* (internal citation omitted).

Applying these principles, the Court concludes that the ALJ did not violate the treating physician rule in evaluating Dr. Whitehead's opinion. The ALJ complied with the sequential evaluation and considered the regulatory factors in assessing Dr. Whitehead's opinion. AR at 25. The decision reflects the degree of weight she assigned the opinion—partial weight—and relies upon the majority of the relevant factors in explaining the outcome. *See id.* at 25. She discussed length and frequency of treatment, consistency with the record, degree of support from the record, and Dr. Whitehead's credentials. *Id.* She was not required to consider all factors nor specifically number which factors she included. Even if the Court prefers a fuller analysis from the ALJ on

14

this point, that is not the province of judicial review. Rather the Court must only determine whether the ALJ provided sufficiently clear reasons for the weight she assigned Dr. Whitehead's opinion. *See Martinez*, 2016 WL 8230658, at *7; *Robinson*, 366 F.3d at 1082. Under this rubric, the Court finds that the ALJ's explanation for giving partial weight to Dr. Whitehead's opinion is sufficiently specific enough to allow for meaningful review, and therefore the Court finds no legal error.

Plaintiff also challenges the ALJ's evaluation of Dr. Whitehead's opinion as not supported by substantial evidence. Plaintiff argues that the ALJ improperly cherry-picked evidence when rejecting Dr. Whitehead's opinion that Plaintiff is markedly limited in his ability to concentrate. [Doc. 20, p. 13-15]. The Commissioner responds that Plaintiff's cherry-picking argument in effect asks the Court to improperly reweigh the evidence, citing other evidence in the record supporting the ALJ's finding. [Doc. 22, p. 14, 15].

The Court agrees with the Commissioner. The ALJ found that Dr. Whitehead's opinion that Plaintiff is:

> markedly limited in his ability to concentrate and persist is inconsistent with the record showing that the claimant reported he has difficulty with concentration at times, but is generally able to focus (9F/5). It is also inconsistent with the claimant's and his fiancee's statements that he is able to finish what he starts (6E/6; 8E/6). Further, it is inconsistent with the consultative examination showing that he seemed distractible, but appeared moderately impaired in his ability to concentrate (9F/5).

AR at 25. The ALJ cited several evidentiary sources to support rejecting Dr. Whitehead's finding a marked limitation in concentration. *Id.* Plaintiff attempts to chip away at each source, and while Plaintiff's argument has surface appeal, it ultimately fails to reduce the quantum of evidence to below "substantial."

The ALJ did not pick and choose from the consultative examiner's and the fiancee's opinions that Plaintiff was moderately impaired in concentration. The ALJ's found both Dr. Foster's and the fiancee's opinions partially persuasive and gave them partial weight. The ALJ

also explained her reasons for doing so. AR at 26-27. Plaintiff urges that a holistic reading of these opinions renders the ALJ's citations to them improper. [Doc. 20, p. 14, 15]. However, even when viewed holistically, the Court does not identify logical inconsistencies between those opinions and Dr. Whitehead's to indicate that the ALJ improperly picked and chose evidence.

Nor do Plaintiff's cases persuade the Court. For example, in *Robinson*, the ALJ altogether failed to state what weight he assigned the treating physician's opinion and also failed to explain why he did not give it controlling weight. *See Robinson*, 366 F.3d at 1082. In the *Hardman* case, the ALJ completely rejected the claimant's pain allegations and limitations with boilerplate language and "barely mentioned" evidence supporting back pain. *Hardman v. Barnhart*, 362 F.3d 676, 680 (10th Cir. 2004). Those examples are not representative of what happened here.

Plaintiff further contends that there is not substantial evidence to support the ALJ rejecting Dr. Whitehead's opinion on Plaintiff's off-task percentage and work absences. [Doc. 20, p. 15]. The Commissioner highlights that the ALJ considered Plaintiff's mood stabilization in light of his recent, helpful psychiatric hospitalization and urges the Court not to reweigh the evidence. [Doc. 22, p. 14-15].

The Court agrees with the Commissioner. The ALJ found in this regard:

> Dr. Whitehead's opinion that the claimant would be off-task 20% of the time and absent from work four days per month is inconsistent with the claimant's and provider's statements that he was stable on his current medication and that he made progress with counseling (4F/4, 6, 8; 7F/2, 5).

AR at 25. Plaintiff characterizes the ALJ as equating "stable" with "good," and urges that stability does not speak to functioning. [Doc. 20, p. 15]. However, nowhere in the decision does the ALJ explicitly or implicitly refer to Plaintiff's condition as "good" or an equivalent. On the other hand, the decision does account for Plaintiff's mental functioning within the RFC mental limitations. AR at 21-22, 24-25.

The Court finds that substantial evidence in the record supports the ALJ's decision to accord less than controlling weight to Dr. Whitehead's opinion. *See Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005). Even if the ALJ's reasons for rejecting portions of Dr. Whitehead's opinion are not "good," as Plaintiff contends, they nevertheless rely upon substantial evidence. A guiding principle is that "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). It follows that the Court must not reweigh the evidence to reach a different result than the ALJ. *See Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). Therefore, the Court finds that the ALJ properly evaluated treating physician Dr. Whitehead's opinion in assessing Plaintiff's mental RFC.

**B. The ALJ did not err in giving partial weight to consultative examiner Dr. Foster.**

The Administration requires an ALJ to evaluate and weigh all medical opinions, regardless of the source. *Sandoval v. Colvin*, No. CV 14-817 KK, 2015 WL 13651204, at *5 (D.N.M. Dec. 22, 2015) (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)). A complete consultative examination report should include the medical source's observations, opinions, and a statement regarding what Plaintiff could do despite his mental impairments. *Id.* (citing 20 C.F.R. §§ 404.1519n(b), (c)(6), and 416.919n(b), (c)(6)). The opinions of consultative examiners are weighed under stricter standards than treating sources and "can be given weight only insofar as they are supported by substantial evidence in the case record," considering factors like supportability and consistency. *Griego v. Colvin*, No. CV 15-1112 GJF, 2017 WL 545788, at *6 (D.N.M. Jan. 18, 2017) (citing SSR 96-6p).

Plaintiff contends that the ALJ failed to properly consider the opinion of consultative examiner Dr. Elaine Foster in assessing Plaintiff's mental RFC. [Doc. 20, p. 17-18]. Plaintiff argues that the ALJ's reliance on Plaintiff's daily activities to partially reject Dr. Foster's opinion is not based on substantial

evidence. *Id.* at 17. Plaintiff posits that the ALJ failed to "build a logical bridge" between the evidence she cites and her conclusions. *Id.* at 17-18. The Commissioner defends with the vocational expert's testimony and other evidence tending to show that Plaintiff could follow instructions. The Court notes that Plaintiff does not allege the ALJ failed to fulfill the regulatory requirement for evaluating a consultative examiner's opinion. *See* 20 C.F.R. §§ 404.1519n(b), (c)(6), and 416.919n(b), (c)(6).

The Court agrees with the Commissioner. The ALJ cited the evidence justifying giving partial weight to Dr. Foster's opinion:

> Dr. Foster's opinion that the claimant had difficulty understanding the following basic instructions is inconsistent with the evidence of record which shows that the claimant was able to engage in activities such as repairing his car (4F/8; 16F/10; 12). Further, it is inconsistent with the claimant's statement that he can follow spoken instructions (6E/6).

AR at 26. The ALJ provided specific reasons—fixing his car and following spoken directions—which allow this Court to conduct a meaningful review of Dr. Foster's above limitations. As the Commissioner points out, the vocational expert's testimony that car repair requires more than a basic ability to follow directions (SVP of 3-5 for semi-skilled work) explains why the Plaintiff working on his car is inconsistent with struggling to understand basic instructions. *See* [Doc. 22, p. 16] (citing AR at 28, 57). The ALJ considered the vocational expert's testimony in conjunction with the evidence and said as much in her decision. *See Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996); *see* AR 28-29. The same is true with Plaintiff's contention that the ALJ failed to analyze in full context Plaintiff's statement indicating he could follow spoken instructions. [Doc. 20, p. 17]. Plaintiff essentially requests the Court to reweigh mental health evidence, which is prohibited. Even if the evidentiary support is thin, it is substantial if more than a scintilla. The Court need not further characterize the strength of the evidence.

Plaintiff's persuasive authority is not analogous here. *See Correa v. Berryhill*, No. 1:16-CV-01314-LF, 2018 WL 1472480, at *8 (D.N.M. Mar. 26, 2018). In *Correa*, the court concluded that the administrative law judge failed to build a logical bridge in finding inconsistency between two specific functional activities, walking and shopping, which the court deemed not functionally equivalent nor inconsistent. 2018 WL 1472480, at *8. Here, the ALJ evaluated a mental limitation against a specific

activity which Plaintiff repeatedly endorsed performing, not a comparison between two functional activities. This is the sort of fact-specific inquiry the ALJ is tasked with performing. The Court finds that the ALJ's decision appropriately reflects the evidence she used and rejected in assessing Dr. Foster's opinion.

**C.  The ALJ did not err in giving partial weight to the non-examining agency psychologists.**

Plaintiff alleges that the ALJ erred in not explaining "which portions of the [non-examining agency] psychological consultants' opinions [s]he adopted and which portions [s]he rejected and why." [Doc. 20, p. 18]. Specifically, Plaintiff urges that the ALJ fatally failed to explain why the RFC provides for occasional interaction with people at work and the public, while the agency consultants opined that Plaintiff could relate to work persons on a superficial basis and not at all to the public. *Id.* at 17-18. The Commissioner implicitly concedes that the ALJ failed to rationalize a lighter limitation that these consultants recommended, but counters that such an omission is harmless error because the jobs available at step five persist even with a more restrictive social limitation. [Doc. 22, p. 17].

The Court agrees with the Commissioner and finds the *Lueras* case the Commissioner cites instructive. *See id.* at 16. In that case, the Tenth Circuit considered the ALJ's failure to account for a state agency psychologist's opinion that the claimant be limited to superficial interaction with co-workers and the public. *Lueras v. Comm'r, SSA*, No. 21-2043, 2022 WL 244142, at *3 (10th Cir. Jan. 27, 2022). The claimant argued that the absence of this limitation or an explanation in the RFC necessitated remand. *Id.* But the Tenth Circuit deemed the error harmless because the jobs the ALJ relied on to conclude that the claimant could do some work "are listed in a category that require the least amount of contact with anyone." *Id.* (internal citation and quotation omitted). Therefore, there was no "actual conflict" between the agency psychologist's limitations and the

jobs to which the vocational expert testified, rendering "any oversight by the ALJ in including these limitations" harmless error. *Id.*

The same logic applies here to render harmless any oversight regarding the agency psychologist's limitations in the RFC. The three step-five jobs the ALJ found Plaintiff could perform (housekeeper cleaner, mail room clerk, and garment sorter) require the least interaction with people possible in the Dictionary of Occupational Titles ("DOT"). *See* [Doc. 22, p. 18]. DOT Appendix B explains that the fifth digit of the occupational code explains a job's relationship to human interaction. DOT, *Appendix B*, https://occupationalinfo.org/appendxb_1.html. The number "8" indicates the lowest amount of human interaction possible on the 0-8 scale, with zero requiring the most human contact. *Id.* The occupational codes of the relevant jobs here (323.687-014, No. 209.687-026, and No. 222.687-014) all include "8" as the fifth digit. *See* DOT, 3-Services Occupations[3] and 2- Clerical and Sales Occupations[4]. There is no lower level of human interaction possible under the governing regulations. Therefore, as in *Lueras*, the ALJ's omission of the agency consultants' stricter social limitations in the RFC is harmless error.[5] *See Lueras*, 2022 WL 244142, at *3.

**D.      The ALJ did not err in giving little weight to nurse practitioner Smith's opinion.**

Plaintiff finally contends that the ALJ failed to properly evaluate the opinion of Certified Nurse Practitioner Smith. [Doc. 20] at 20. Plaintiff makes several points in support. First, Plaintiff asserts that the ALJ improperly relied on Plaintiff's ability to lift heavy equipment while working on his truck. *Id.* at 21. Second, Plaintiff argues that ALJ improperly rejected his alleged need for a cane to ambulate and urges that reading the evidence fairly shows otherwise. *Id.* at 22. Third,

---

[3] https://occupationalinfo.org/32/323687014.html.
[4] https://occupationalinfo.org/cat_div2_0.html.
[5] Plaintiff's reply to this argument simply distinguishes between frequency and quality of social interaction and provides a dictionary citation in support. *See* [Doc. 23, p. 4]. The Court is not persuaded.

Plaintiff challenges the ALJ's reliance on the absence of neurological findings and on Plaintiff's daily activities to reject Smith's postural limitations. *Id.* at 23-24. Fourth, Plaintiff contends that the ALJ failed to analyze Smith's opinion on off-task and absence time in reserving it for the Commissioner.

The Commissioner responds in kind. [Doc. 22] at 19. The Commissioner initially notes that Smith is not entitled to deferential weight as a treating physician because nurse practitioners did not qualify as treating physicians under the regulations in effect at that time. *Id.* at n.5. The Commissioner argues that other evidence showing that Plaintiff's daily activities did not completely defeat his ability to lift and carry substantiates the physical RFC. *Id.* at 19-20. The Commissioner also cites evidence that Plaintiff did not require a cane to ambulate nor require Smith's postural, handling, and reaching limitations. *Id.* at 20-213 In those respects, the Commissioner emphasizes that the Court cannot reweigh the evidence. *Id.* at 23. Finally, regarding Plaintiff's position that the ALJ erred in disregarding Smith's opinion of disabling off-task and absence rate as an issue for the Commissioner, the Commissioner cites the pertinent regulation and urges that the Court can follow the ALJ's reasoning. *Id.* at 24.

The Court agrees with the Commissioner. The ALJ gave nurse Smith's opinion little weight because:

> Her opinion that the *claimant could never lift or carry any weight* is inconsistent with the claimant's own statements that he spent time working on his truck and lifted heavy equipment (4F/8; 16F/10; 12). Further, Ms. Smith's statement that the *claimant required a cane* but could not ambulate because he was very unsteady is nonsensical and inconsistent with the evidence showing that the claimant had normal gait, normal motor strength, sensation, reflexes, and coordination (2F/11; 7F/9; 11, 13; 3F/19, 26; 9F/3; 10F/1, 4; 22F/24). Likewise, her opinion that the *claimant could only occasionally reach, handle, and rarely or never engage in postural activities* is inconsistent with the claimant's statements about his activities and the record showing normal strength, sensation, and reflexes. Finally, her opinion that *the claimant would be significantly off-task and absent and is unable to work* is inconsistent with the record as described above and is an issue resolved

for the Commissioner. Ms. Smith treated the claimant over five appointments, but
her treatment notes do not specifically describe the limitations she finds here (17F).

AR at 27 (limitations emphasized). The Court makes two preliminary observations. First, the
Commissioner is correct that Smith is not a treating physician under the regulation in effect at the
time, and therefore her opinion is not afforded special weight. 20 C.F.R. §§ 404.1502(a)(7)
(explaining that a licensed advanced practice registered nurse or similar is an acceptable medical
source *only in claims filed on or after March 27, 2017*). Plaintiff apparently does not dispute this.

Second, the Court observes that Smith's explanations for her findings on lifting/carrying
refer to the imaging, and her findings on sitting/standing/walking, cane use, use of hands, use of
feet, and postural activities refer back to "#3" on page one of her treating source statement. AR at
1090-94. Number three simply states Plaintiff's diagnoses for intervertebral disc disorder,
myofascial pain syndrome, and chronic cervical spine pain. *Id.*   at 1090. Physician opinions that
comprise brief, unsupported statements may be rejected as conclusory and not substantial
evidence. *Hardman*, 362 F.3d at 680 (citing *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir.1987) (a
"physician's opinion [may] be rejected if it is brief, conclusory, and unsupported by medical
evidence."); *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir.1992) (evidence is not
substantial if it really constitutes not evidence but mere conclusion)). Smith's repeated references
to "#3" to explain her opinions are conclusory. With those concerns in mind, the Court will turn
to the parties' arguments.

The Court does not find reversible error in the ALJ's reliance on Plaintiff's lifting heavy
equipment during truck repair to reject Smith's opinion that he could never lift or carry at all. The
ALJ explained her reasons for finding the opinion inconsistent with the record and the Court will
not reweigh the evidence. *See* AR at 27. Further, the case Plaintiff cites is inapposite here for three
reasons. *See Ragland v. Shalala*, 992 F.2d 1056, 1060 (10th Cir. 1993). First, the framing is wrong

insofar as the case does not address daily activities in the context of an ALJ assessing medical opinion evidence. *See id.* Second, the administrative law judge in that case improperly relied on a conclusory statement that the claimant could handily pick up her four year-old child, when in reality her child was two and a half. *Id.* Third, the case does not contextualize the phrase on daily activities Plaintiff quotes, leaving the Court unable ascertain its meaning. Plaintiff's second case, *Thompson v. Sullivan*, likewise does not address the context of medical opinion evidence but instead reviews the ALJ's determination that the claimant's complaints of pain were not credible. *See Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993). The ALJ did not discredit Plaintiff's pain here or insinuate he fabricated complaints of pain. Rather, the ALJ properly pointed out that Smith's lifting/carrying limitation is inconsistent with other evidence.

 Plaintiff's argument that the ALJ improperly rejected Smith's opinion that Plaintiff needed a cane to ambulate is also without merit. The Court will not reweigh the evidence. *See Lax*, 489 F.3d at 1084. The ALJ considered the applicable regulation concerning assistive device use and measured it against facts specific to Plaintiff's situation. AR at 23. She also noted inconsistent evidence that prior medical examinations reflected normal gait and motor strength. *Id.* at 27. The Court's review confirms this. Various records from other providers at La Clinica de Familia, as well as Dr. Muralidhasan and Dr. Harrison, did not mention cane use or ambulation difficulties. Smith's opinion provides no specifics on cane use other than the phrase "very unsteady." AR at 1090.

 Plaintiff's challenge to the ALJ discounting nurse Smith's postural limitations, largely based on Plaintiff's inconsistent daily activities, is also unconvincing. Plaintiff's argument is duplicative of his points on the lifting/carrying limitation. His authority is also unpersuasive. In *Banks*, the claimant had a more severe and significant injury history, having undergone surgery

for a herniated cervical disk and an aneurism behind his knee. *Banks v. Sullivan*, 956 F.2d 277 (10th Cir. 1992). Afterward, he was documented using crutches and continued having right leg pain. *Id.* He also had a long history of seizures and a bony abnormality in his brain from past trauma. *Id.* The ALJ nonetheless found the claimant capable of the full range of light work with no limitations. *Id.* In light of compelling medical history, the court rejected the administrative law judge's reliance on the claimant's daily activities to find he could fulfill the full light work requirements. *Id.*

Here, neither Plaintiff's medical records nor testimony measures up to the severity of the *Banks* case. Moreover, the ALJ here did not impose the full range of light work, but in fact incorporated some of Smith's strictest limitations into the RFC, finding that Plaintiff can "never climb ladders, ropes, or scaffolds." AR at 21. While the ALJ did not adopt Smith's remaining postural limitations verbatim, she did restrict all other relevant functions to "occasionally." *Id.* The ALJ's decision discussed the evidence pertaining to Plaintiff's back problems, including evidence she did not rely on, and articulated what she found unpersuasive. AR at 22-23. Smith only explained her postural limitation assessment by citing "#3." 1093. The Court is not persuaded that substantial evidence is lacking here.

Plaintiff's last challenge here is that the ALJ's decision inappropriately characterizes Smith's opinion that Plaintiff would be off-task a quarter of the day and absent over four days per month as "an issue reserved for the Commissioner." [Doc. 20, p. 25]; AR at 27. Plaintiff concedes that regulations provide that "a determination as to whether the person is disabled is reserved for the Commissioner," but characterizes Smith's opinion as a work-related functional limitation. *Id.* (20 C.F.R §§ 404.1520(b)(c), 416.920b(c)). However, this limitation is one Smith substantively expanded by notating that Plaintiff is unable to work next to the checked boxes. AR at 1090.

This "unable to work" descriptor falls squarely into the category of opinions § 404.1527(d) is meant to address. 20 C.F.R. § 404.1527(d)(1)-(3). That regulation specifically provides that the Administration "will not give any special significance to the source of an opinion on issues reserved to the Commissioner," such as "a statement by a medical source that you are 'disabled' or 'unable to work.'" *Id.* This type of statement merits no special significance because it is a dispositive administrative decision. § 404.1527(d), (3). Plaintiff adds that the ALJ erred by deeming this limitation inconsistent with the record "as described above." *See* AR 27. The Court views this as a form-over-function argument given the paragraph of text on Smith's opinion preceding the specific limitation. *See id.* Further, the next sentence states Smith's "treatment notes do not specifically describe the limitations she finds here (17/F)." *Id.* Thus, the Court declines to find error on this basis.

## VI.   <u>CONCLUSION AND ORDER</u>

For the reasons state above, the Court finds that the ALJ properly evaluated the medical opinion evidence in formulating Plaintiff's mental and physical RFC. The Court commends Plaintiff for a well-written brief and laudable advocacy. However, judicial review is not de novo. *See Griego*, 2017 WL 545788, at *7. The Court is constrained to review the ALJ's analysis of these medical opinions for errors of law. *See id.* The Court may not reweigh the evidence nor substitute its judgment for the agency's in making its ultimate determination. *See id.* Rather, it is to determine whether the ALJ properly explained her reasoning for the weight she assigned these opinions. *See id.* The Court finds that she did here, and thus will affirm the ALJ's decision.

**IT IS THEREFORE ORDERED** that Plaintiff Thomas Lyannas's Motion to Reverse and Remand, [Doc. 20], is **DENIED** and the Commissioner's Final Decision in this case is **AFFIRMED.**

Jerry H. Ritter
U.S. Magistrate Judge
Presiding by Consent